# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, a national banking association, as successor-in-interest to the FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver for Park National Bank,<br><br>                 Plaintiff,<br>vs.<br><br>SANDY K. FRIEDRICHS, an individual; and DOES 1 through 50, inclusive,<br><br>                 Defendants. | CASE NO. 12cv2373-GPC(KSC)<br><br>**ORDER DISSOLVING PRELIMINARY INJUNCTION** |

On October 15, 2012, Defendant filed an *ex parte* motion for temporary restraining order and preliminary injunction seeking to restrain Plaintiff from foreclosing Defendant's property located at 1340 La Mirada Drive, San Marcos, California 92078. (Dkt. No. 3.) On October 18, 2012, the Court denied Defendant's *ex parte* motion for a temporary restraining order because the Court concluded that Defendant had not shown irreparable harm since Plaintiff had moved the sale of the property to November 15, 2012. (Dkt. No. 6.) The Court also set a briefing schedule as to the motion for preliminary injunction. (Id.) On November 9, 2012, the Court held a hearing on the motion for preliminary injunction. (Dkt. No. 31.) At the hearing, the Court granted Defendant's motion for preliminary injunction pending further briefing by the parties. (Dkt. No. 33.)

The Court finds the matter suitable for resolution without oral argument pursuant to Local Civil

Rule 7.1(d)(1). Based on the reasoning below, the Court DISSOLVES the preliminary injunction issued on November 9, 2012. (Dkt. No. 33.)

**Procedural Background**

On July 13, 2012, Plaintiff U.S. Bank National Association ("U.S. Bank"), as successor to the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Park National Bank ("Park National") filed a complaint in the Superior Court of San Diego against Defendant Sandy Friedrichs for appointment of receiver and judicial foreclosure. On September 28, 2012, Defendant Sandy Zappia and non-party Albert Zappia, Defendant's husband, proceeding *pro se*, removed the case to this Court. (Dkt. No. 1.) On October 12, 2012, the case was transferred to the undersigned judge. (Dkt. No. 2.) On October 15, 2012, Defendant filed an *ex parte* motion for temporary restraining order and preliminary injunction seeking to restrain Plaintiff from foreclosing Defendant's business property located at 1340 La Mirada Drive, San Marcos, California 92078. (Dkt. No. 3.) On October 18, 2012, the Court denied Defendant's *ex parte* motion for a temporary restraining order because the Court concluded that Defendant had not shown irreparable harm since Plaintiff had moved the sale of the property to November 15, 2012. (Dkt. No. 6.) Defendant filed a supplemental brief on October 29, 2012. (Dkt. No. 15.) Plaintiff filed an opposition on October 31, 2012. (Dkt. No. 16.) Defendant filed a reply on November 6, 2012. (Dkt. No. 28.)

On November 9, 2012, the Court held a hearing on Defendant's motion for preliminary injunction. (Dkt. No. 31.) At the hearing, the Court granted Defendant's motion for preliminary injunction pending further briefing by the parties. (Dkt. No. 33.) Defendant was also required to post a $100,000 bond no later than November 15, 2012. (Id.) Defendant was also required to deposit with the Clerk of Court by the 15th day of each month the amount of $2,100.00.

On November 16, 2012, Plaintiff filed a supplemental brief. (Dkt. No. 35.) Around November 29, 2012, Defendant submitted a bond packet to the Court. (Dkt. No. 49.) On December 3, 2012, Plaintiff filed an objection to Defendant's bond packet. (Dkt. No. 47.) On the same day, Defendant filed a sur-reply in support of its motion for preliminary injunction. (Dkt. No. 51.) Subsequently, Plaintiff submitted another bond packet to include a missing title report.

Because the bond packet did not show that Defendant had sufficient collateral in the two

properties Defendant sought to use to secure the bond, the Court set an order to show cause hearing why the preliminary injunction should not be dissolved. (Dkt. No. 54.) On December 11, 2012, Defendant filed a response to the OSC. (Dkt. No. 60.) On December 20, 2012, the Court held a hearing regarding sufficiency of the bond and a hearing on issues raised at the previous hearing on Defendant's motion for preliminary injunction. (Dkt. No. 71.) The Court granted Defendant's request to file documents entitled Request for Judicial Notice to demonstrate that the properties for the bond had sufficient equity. (Dkt. No. 72.) In addition, Plaintiff was directed to file supplemental documents on or before December 26, 2012. (Dkt. No. 71.) On December 26, 2012, Plaintiff filed a third supplemental declaration of Nicholas Ocepek. (Dkt. No. 75.). On January 3, 2013, Plaintiff filed an objection to Defendant's Request for Judicial Notice filed on December 20, 2012. (Dkt. No. 80.)

**Factual Background**

Around April 9, 2007, GreenPoint Mortgage Funding lent Defendant, on a recourse basis, the principal sum of $340,000, secured by the property located at 1340 La Mirada Drive, San Marcos, CA 92078. (Dkt. No. 5-1, Ocepek Decl. ¶¶ 5-6; Ex. 1.) The loan was memorialized in a written Promissory Note. (Id.) On April 18, 2007, GreenPoint recorded a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" ("Deed of Trust") with the San Diego County Recorder's Office. (Id. ¶ 7; Ex. 2.) Defendant executed the Deed of Trust as trustor, to GreenPoint, as beneficiary, and to Marin Conveyancing Corp., as trustee. (Id.) According to the title policy issued in connection with the Loan, the Deed of Trust constitutes a first priority lien on the Property. (Id. ¶ 7; Ex. 2.)

On August 1, 2008, Park National recorded an "Assignment of Deed of Trust" whereby GreenPoint assigned all of its right, title, and interest in, to and under the Note, Deed of Trust and Assignment to Park National. (Id. ¶ 9; Ex. 3.) The loan assignment was executed and notarized in April 2007 and became effective in February 2008, when the sale of the Loan to Park National was consummated. (Id.)

On October 30, 2009, the FDIC placed Park National into receivership and assigned the assets of Park National, including the Loan, to U.S. Bank. (Id. ¶ 10; Ex. 4.) The Note was assigned from GreenPoint to Park National by way of an Endorsement on the last page of the Note. (Id. ¶ 6 ; Ex. 1.)

1  When the FDIC closed Park National, the Note was assigned by the FDIC as Receiver for Park
2  National to U.S. Bank by way of an Allonge to Note. (Id.) As a result of the Endorsement and
3  Allonge, U.S. Bank claims it is the current holder of the Note.
4      In late March 2012, non-party Albert Zappia submitted a check in the amount of $287,734.26
5  to U.S. Bank as an attempted payoff for the Loan. (Id. ¶ 12.) The check bore the notation "EFT Only
6  for Discharge of Debt." The check was returned because it was written on a closed account. (Id.; Ex.
7  5.)
8      Starting in April and May 2012, Defendant failed to make her monthly loan payment. (Id. ¶
9  13.) Defendant's failure to pay the Loan is a default on the obligations for which the Deed of Trust
10 is security. (Id.)
11     Around June 22, 2012, U.S. Bank recorded a Substitution of Trustee, wherein Beacon Default
12 Management, Inc. became the successor trustee under the Deed of Trust. (Id. ¶ 14; Ex. 6.) U.S. Bank
13 started non-judicial foreclosure proceedings by recording a notice of default and election to sell around
14 June 22, 2012. (Id. ¶ 15; Ex. 7.) Around September 12, 2012, U.S. Bank noticed a trustee's sale on
15 the property for October 18, 2012. (Id. ¶ 16.) The sale was been postponed until November 15, 2012.
16 (Id. ¶ 17.)

17                                    **Discussion**
18                                         **I**
19                              **Preliminary Injunction**

20     To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success
21 on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary
22 relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in
23 the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).
24     Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be
25 balanced such that "serious questions" going to the merits and a balance of hardships that "tips
26 sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met.
27 Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary
28 injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the

plaintiff is entitled to such relief," Winter, 555 U.S. at 22, and the moving party bears the burden of meeting all four Winter prongs. See Cottrell, 632 F.3d at 1135; DISH Network Corp. v. FCC, 653 F.3d 771, 776–77 (9th Cir. 2011).

**A.     Likelihood of Success on the Merits**

   **1.     Assignment of the Deed of Trust**

Defendant argues that the Assignment of the Deed of Trust from GreenPoint to Park National Bank is invalid because it was not properly notarized. The Assignment was executed on February 29, 2008 by Patrick Nygard; however, the Assignment was notarized months earlier in April 2007. (Dkt. No. 5-1, Ex. 3.) Defendant cites to California law that states that a document that a notary witnesses must be complete at the time of notarization. Cal. Gov't Code § 8205(a)(2).  Therefore, since the Assignment was notarized in April 2007 and the document was executed and signed on February 29, 2008, Defendant argues the document was not properly notarized and not properly assigned. Defendant contends that the discrepancy invalidates the assignment since it was modified after it was notarized.

In a declaration, Plaintiff states that the "loan assignment was executed and notarized in April 2007 and became effective in February 2008 when the sale of the Loan to Park National was consummated."  (Dkt. No. 5-1, Ocepek Decl. ¶ 9.)  On the assignment of deed of trust from GreenPoint to Park National, the notary date is April 25, 2007; however, the signature of Patrick Nygard is accompanied with an x marked over April 25, 2007 and the inclusion of February 29, 2008. (Dkt. No. 5-1 at 62.)

Plaintiff explains that the different dates can be explained by the deal structure between GreenPoint, Lehman and Park National. The Loan Assignment was prepared by GreenPoint in blank prior to Defendant's loan being sold to Lehman. (Dkt. No. 35-5, Tharpe Decl. ¶ 5; Dkt. No. 35-1, Barlow ¶ 5.)  Lehman's name was not entered on the Loan Assignment because it intended to securitize Defendant's loan and fill in the blank Loan Assignment with the ultimate purchaser. (Dkt. No. 35-1, Barlow Decl. ¶¶ 5, 6.)  Lehman then changed course and sold Defendant's loan to Park National. (Id. ¶ 5.)  After Park National purchased Defendant's loan around February 1, 2008, the Loan Assignment was filled in with Park National's name and dated, February 1, 2008, as the effective

date of assignment. (Id. ¶ 6.)

Plaintiff also contends that any document transferring or encumbering property is effective and valid between the parties and enforceable against any person who has actual notice of its contents even if it was not acknowledged. See Osterberg v. Osterberg, 68 Cal. App. 2d 254, 262 (1945) (alteration of deed after acknowledgment but before delivery was valid as long as there is consent); Kirsch v. Barnes, 153 F. Supp. 260, 263 (C.D. Cal. 1957) (although a defectively acknowledged instrument is not entitled to be recorded, an instrument is not invalid as between the parties to the instrument and all those having actual notice of its existence); Johndrow v. Thomas, 31 Cal.2d 202, 206 (1947) (an acknowledgment is not essential to the validity of a deed as a conveyance of the property).

Moreover, Plaintiff argues that even if the assignment was not valid, the transfer of a note carries with it the security for the Note. California Civil Code section 2936 provides that "the assignment of a debt secured by mortgage carries with it the security." Cal. Civ. Code § 2936. In addition, the United States Supreme Court held that the "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." Carpenter v. Longan, 88 U.S. 271, 275 (1972).  In one case, Judge Gonzalez explained that the transfer of the note without the mortgage does not cause the mortgage to become null or the note to become unsecured - "the mortgage automatically follows the note." Davidson v. Countrywide Home Loans, Inc., 2010 WL 862712, at *5 (S.D. Cal. 2010).

Defendant does not address this issue. However, she cites to cases that support Plaintiff's position that "endorsement of the note by the payee was sufficient to transfer the deed of trust without other assignment." Cockerell v. Title Ins. & Trust Co., 42 Cal. 3d 284, 291 (1954). The cases Defendant cites to support her position concern the assignment of the note, not the assignment of a deed of trust. Therefore, an assignment of the deed of trust does not determine whether a party owns a Note. Therefore, Defendant has not shown a likelihood of success on the merits that U.S. Bank is not the owner of the Note.

**2.     Assignment of the Deed of Trust as to Lehman**

In addition, Defendant argues that Plaintiff failed to identify the Note as ever being owned by Lehman Brothers Small Finance ("Lehman Brothers") and how her loan was later transferred to Park

1  National Bank.  (Dkt. No. 15, D's Mem. in Support of Prelim. Injunction, Exs. A, B.)  By letter,
2  Lehman Brothers informed Defendant that it purchased the Note from GreenPoint as of July 1, 2007.
3  (Id.)  On March 17, 2008, Park National wrote Defendant indicating that it purchased her loan from
4  Lehman Brothers.  (Id.)  Since there is no mention of Lehman Brothers in Plaintiff's documents,
5  Defendant argues that the assignment to Plaintiff U.S. Bank is not valid as there was a break in the
6  chain of ownership.

7  According to Plaintiff, around January 1, 2007, GreenPoint entered into a flow purchase
8  agreement with Lehman Capital, a division of Lehman Brothers Holding, Inc. where Lehman agreed
9  to purchase certain loans and servicing from GreenPoint.[1]  (Dkt. No. 35-5, Tharpe Decl. ¶ 3; Dkt. No.
10 58-1, Ex. F.) Defendant's loan was sold to Lehman around July 2007 pursuant to the Flow Agreement.
11 (Dkt. No. 35-5, Tharpe Decl. ¶ 4; Dkt. No. 35-1, Barlow Decl. ¶ 4.) The endorsement of the note and
12 assignment of deed of trust for these loans purchased by Lehman were prepared by GreenPoint in
13 blank and delivered to Lehman. (Dkt. No. 35-5, Tharpe Decl. ¶ 5; Dkt. No. 35-1, Barlow Decl. ¶¶ 4-
14 5.) It was intended that the assignments would be filled in with the date and name of the ultimate
15 purchaser and recorded once these loans had been purchased from Lehman. (Dkt. No. 35-1, Barlow
16 Decl. ¶¶ 5, 6.)

17 According to the Flow Purchase Agreement, the promissory notes purchased by Lehman would
18 be endorsed in blank using the phrase "Pay to the order _____, without recourse" and signed by
19 an authorized officer of GreenPoint. (Dkt. No. 58-1, Tanada Decl., Ex. F at § 2(c)(i).) It also provided
20 that assignments of mortgages were to be blank and in the form and substance acceptable for
21 recording, but not recorded.  (Id. § 2(c)(iii).)  Furthermore, the agreement provided that GreenPoint
22 would hold title to the mortgages and shall prepare assignments in blank from GreenPoint which is
23 acceptable to the trustee or other third party. (Id. § 28.)

24 Lehman originally purchased these loans from GreenPoint with the intent to securitize them;
25 however, it decided to sell these loans, including Defendant's loan. (Dkt. No. 35-1, Barlow Decl. ¶¶
26 4-6.)  On February 1, 2008, Park National purchased Defendant's loan when it purchased a pool of

27
28    [1]Around April 9, 2007, GreenPoint Mortgage Funding lent Defendant, on a recourse basis, the principal sum of $340,000, secured by the property located at 1340 La Mirada Drive, San Marcos, CA 92078.  (Dkt. No. 5-1, Ocepek Decl. ¶¶ 5-6; Ex. 1.)

fixed and adjustable rate small balance commercial loans from Lehman. (Barlow Decl. ¶ 3; Ex. 1.)

Plaintiff has demonstrated that pursuant to an written Flow Purchase Agreement between GreenPoint and Park National that the parties agreed that the endorsement of the note and assignment of the deed of trust for Defendant's loan purchased by Lehman were prepared by GreenPoint in blank and delivered to Lehman and that the assignments would be filled in with the date and name of the ultimate purchaser and recorded once these loans had been purchased from Lehman. Therefore, Defendant has failed to show a likelihood of success on the merits that the assignment of the deed of trust and the note to U.S. Bank was not valid.

### 3. Validity of the Endorsement of the Note

Defendant argues that the endorsement of the Note from GreenPoint to Park National Bank is not valid because the endorsement fails to provide any identifying information to indicate which loan the endorsement is referencing. (Dkt. No. 5-1 at 17.) In opposition, Plaintiff argues that an endorsement of a negotiable instrument must be "made on [the] instrument" citing to Cal. Com. Code § 3204.

In one case, Judge Sammartino concluded that the evidence did not demonstrate that the allonge was affixed to the note as there was no evidence that it was stapled or otherwise attached to the Note. Multibank 2009-1RES-ADC Venture v. San Diego Comm. Hous. Corp., 2011 WL 1044612 (S.D. Cal. 2011) (citing Adams v. Madison Realty & Dev., Inc., 853 F.2d 163, 166 (3d Cir. 1988) (concluding that notes had not been properly negotiated because indorsement sheets "were not physically attached to the instruments in any way"); In re Weisband, 427 B.R. 13, 18–20 (Bankr. D. Ariz. 2010) (holding that purported creditor lacked standing as holder of note because there was no evidence that endorsement to creditor was stapled or otherwise attached to the rest of the note)).

Here, on December 26, 2012, Plaintiff provided a declaration of Nicholas Ocepek, Vice President of U.S. Bank and previously a loan officer of Park National and assisted both banks with the monitoring and collection of the loan at issue. (Dkt. No. 75, Ocepek Decl. ¶ 1.) Ocepek states that the Note was assigned from GreenPoint to Park National by way of an Endorsement on the last page of the Note. (Id. ¶ 3.) Later, when the FDIC closed Park National, the "Note was assigned by the FDIC as Receiver for Park National to U.S. Bank by way of an Allonge to Note." (Id.) He states that

both "the Endorsement and the Allonge are stapled to the original Note." (Id.)

Therefore, Defendant has failed to show likelihood of success on the merits that the Endorsement was not properly affixed to the note.

**4.     Offer of Tender**

Defendant argues that the alleged debt has been discharged by the offer of performance made on March 23, 2012 and as accepted by Plaintiff as evidenced by it providing an invoice showing a $0.00 balance and issuing a "refund overpayment" check to Defendant.

Defendant argues that an offer of performance made to pay an alleged debt extinguishes and discharges the alleged debt and cites to Cal. Civil Code § 1485. Since she tendered an Electronic Funds Transfer instrument ("EFT"), she contends that the debt has been discharged.

Plaintiff contends that the debt has not been discharged because the EFT instrument was returned since it was written on a closed account. Moreover, Plaintiff maintains that Defendant has not provided any evidence that the Loan has been discharged.

California Code of Civil Procedure section 1485 provides that "an obligation is extinguished by an offer of performance, made in conformity to the rules herein prescribed, and with intent to extinguish the obligation." Cal. Civ. Proc. Code § 1485. In order for the offer to be valid, it must be made in good faith, unconditional, offer full performance, and must be able to perform. Cal. Civ. Code §§ 1486, 1493, 1494, 1495. "An offer of performance is of no effect if the person making it is not able to perform." Karlsen v. American Sav. & Loan Assn., 15 Cal. App. 3d 112, 118 (1971). If the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. Id.

Here, even though Defendant attempted to tender payment through the EFT check, it was returned for insufficient funds and Defendant did not have the money to make the offer good. At the hearing on the motion for preliminary injunction, Defendant admitted that it was drawn on a closed account. Therefore, Defendant's offer of performance was not valid.[2]

Accordingly, the Court concludes that Defendant has failed to establish a likelihood of success

---

[2] Generally, tender of the amount owed is a necessary to any claim for wrongful foreclosure or challenge to the validity of a foreclosure sale. See Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1110 (1996); Management Corp. v. Eischen, 158 Cal. App. 3d 575, 577 (1984).

on the merits.

## B. Irreparable Harm to the Moving Party

Defendant claims that she will suffer economic harm and displacement as her business is located at the property in dispute. She states that she has about 20 to 30 employees and the building is customized for the production of her company's goods. Plaintiff argues that Defendant can be compensated through monetary damages.

The Court concludes Defendant will suffer irreparable harm as it would affect her business and employees.

## C. Balancing the Equities

In balancing the equities, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (citation omitted). If the preliminary injunction is dissolved, Defendant would suffer hardship to her business and her employees. On the other hand, if the preliminary injunction continues, the delay would cause increasing costs U.S. Bank and its shareholders. The Court concludes that both sides will be affected by the granting or dissolving of the preliminary injunction.

## D. Public Interest

Since the injunction is narrow and limited in scope, the Court finds that the public interest is a neutral factor. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1138-39 (9th Cir. 2009) (citation omitted) (public interest factor is a neutral factor when the reach of an injunction is narrow and limited to the parties).

Based on the supplemental briefs filed by the parties, Defendant has not met her burden of demonstrating that a preliminary injunction is warranted. Accordingly, the Court DISSOLVES the preliminary junction.

## II.
## Sufficiency of Bond

After a review of the bond packet and noticing that the title report showed that the debt was greater than the value of the two properties, on December 3, 2012, the Court set an order to show cause hearing why the preliminary injunction should not be dissolved. At the hearing, Defendant submitted

additional documents arguing certain debts have been eliminated so the Stevenson property has sufficient equity to secure a bond. However, these documents fail to show that she has sufficient security to post a bond in support of preliminary injunction.

Initially, Plaintiff argues that the parties cannot act as sureties. Plaintiff alleges that a surety must be a licensed and credible source separate and independent from the party to the litigation; however, it provides no legal support for its argument. Local Civil Rule 65.1.2 allows two individual residents of the district, each of whom owns real or personal property within the district of value sufficient to justify the full amount of the surety. Local Civ. R. 65.1.2. The Rule does not exclude parties from being sureties. Therefore, it is appropriate for Defendant and her husband to act as sureties.

Second, Plaintiff asserts that the properties proposed as security for the bond do not have adequate equity as the properties are not valued at no less than twice the amount of the bond, which is $200,000.

On December 20, 2012, Plaintiff filed a Notice of Request for Judicial Notice in Support of Sustaining Preliminary Injunction ("RJN") which purports to demonstrate that certain debt on the Stevenson property have been discharged. In the RJN, Defendant concedes that the Iron Horse Property will not be used as security. As to the Stevenson property, Defendant contends that the debt to Well Fargo Bank in the amount of $50,000 and World Savings Bank, FSB in the amount of $558,750 has been discharged pursuant to a Discharge of Debtor dated March 9, 2004 by the Bankruptcy Court. (Dkt. No. 72, RJN, Ex. A.) She also attaches a Court order discharging items 11 and 12 of the title report totaling $412,194.91. (Id., Ex. B.)

On January 3, 2013, Plaintiff filed an objection to the RJN which shows that Defendant still does not have sufficient equity in either the Iron Horse Property and Stevenson Property to offer as security. First, U.S. Bank argues that the attached appraisal value in the RJN prepared by an appraisal is not admissible as there is no declaration or affidavit from the appraiser to authenticate the appraisal. Second, the Chapter 7 bankruptcy discharge, dated March 2004, only extinguishes the "personal liability of the debtor." Johnson v. Home State Bank, 501 U.S. 78, 82-83 (1991) (discharge in a Chapter 7 liquidation only extinguishes the "personal liability of the debtor" and the creditor's right

to foreclose on the mortgage survives or passes through the bankruptcy). A creditor's right to foreclose on a mortgage survives the bankruptcy. Id. U.S. Bank asserts that is why these secured liens still appear on the title report. Moreover, as specifically stated in the bankruptcy discharge, a discharge prohibits any attempt to collect from the debtor a debt that has been discharged; however, a "creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if the lien was not avoided or eliminated in the bankruptcy case." (Dkt. No. 72, RJN, Ex. A.) The Court agrees.

According to the title report, the debt to Wells Fargo Bank of $50,000 and the debt to World Savings Bank, FSB in the amount of $558,750.00 are still liens on the Stevenson property. Moreover, there is a tax lien in the amount of $354,956.61. These three debts total $963,706.61. The property is alleged to have an appraisal of $738,000. (Dkt. No. 72 at 32.) Therefore, the Court finds that the debt owed on the property exceeds the value of the property. Accordingly, Defendant has failed to comply with the bond provisions under Local Civil Rule 65.1.2.

**Conclusion**

Based on the above, the Court DISSOLVES the preliminary injunction issued on November 9, 2012 based on Defendant's failure meet the standard for a preliminary injunction and for failure to comply with the bond provisions under Local Civil Rule 65.1.2.

DATED: February 13, 2013

_____
HON. GONZALO P. CURIEL
United States District Judge