```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   U.S. BANK, N.A., AS              .
     SUCCESSOR-IN-INTEREST TO THE     . NO. 12-CV-2373
 5   FEDERAL DEPOSIT INSURANCE        . NOVEMBER 9, 2012
     CORPORATION, RECEIVER FOR PARK   . SAN DIEGO, CALIFORNIA
 6   NATIONAL BANK                    .
                                      .
 7        PLAINTIFF,                  .
                                      .
 8             VS.                    .
                                      .
 9   SANDY K. FRIEDRICHS, AN INDIVIDUAL;.
     AND DOES 1 THROUGH 50, INCLUSIVE,  .
10                                    .
          DEFENDANTS.                 .
11   . . . . . . . . . . . . . . . . ..

12

13

14                 TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE GONZALO P. CURIEL
15                 UNITED STATES DISTRICT JUDGE

16   APPEARANCES:

17   FOR THE PLAINTIFF:        KATTEN, MUCHIN, ROSENMAN, LLP
                               BY:  BRIAN J. TANADA
18                             2029 CENTURY PARK EAST, SUITE 2600
                               LOS ANGELES, CALIFORNIA  90067
19
     FOR THE DEFENDANT:        ALBERT PATRICK ZAPPIA, PRO PER
20                             SANDY ZAPPIA, PRO PER
                               1340 LA MIRADA DRIVE
21                             SAN MARCOS, CALIFORNIA  92078

22
     COURT REPORTER:           JULIET Y. EICHENLAUB, CSR, RPR
23                             USDC CLERK'S OFFICE
                               333 WEST BROADWAY, SUITE 420
24                             SAN DIEGO, CALIFORNIA  92101
                               JULIET_EICHENLAUB@CASD.USCOURTS.GOV
25
     REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER
```

```
 1              SAN DIEGO, CALIFORNIA; NOVEMBER 9, 2012

 2                              * * * *

 3         THE CLERK:  NUMBER FIVE ON CALENDAR, CASE 12-CV-2373,

 4    U.S. BANK NATIONAL ASSOCIATION V. FRIEDRICHS, ET AL, FOR A

 5    MOTION HEARING.

 6         MR. ZAPPIA:  GOOD AFTERNOON, YOUR HONOR.

 7         I'M ALBERT ZAPPIA, AND THIS IS SANDRA FRIEDRICHS.

 8         THE COURT:  GOOD AFTERNOON.

 9         MR. TANADA:  GOOD AFTERNOON.  MY NAME IS BRIAN TANADA

10    ON BEHALF OF U.S. BANK.

11         THE COURT:  GOOD AFTERNOON.

12         WE'RE HERE FOR A HEARING ON A MOTION FOR PRELIMINARY

13    INJUNCTION THAT WAS FILED BY MS. ZAPPIA, FORMERLY KNOWN AS

14    AND NAMED AS SANDY FRIEDRICHS IN THE ACTION.

15         AND I GUESS AS A THRESHOLD MATTER, LET ME INQUIRE

16    ABOUT MR. ZAPPIA WHO AT THIS TIME, I UNDERSTAND, IS THE

17    HUSBAND OF MS. ZAPPIA, FORMERLY SANDY FRIEDRICHS; IS THAT

18    CORRECT?

19         MR. ZAPPIA:  THAT IS CORRECT, YOUR HONOR.

20         THE COURT:  BUT AS I ALSO UNDERSTAND IT,

21    MR. ZAPPIA, YOU WEREN'T A PARTY TO THE MORTGAGE, OF THE

22    AGREEMENTS, THAT WERE MADE IN THIS CASE WITH RESPECT TO

23    THE COMMERCIAL PROPERTY AT QUESTION; IS THAT RIGHT?

24         MR. ZAPPIA:  THAT IS CORRECT, AT THE TIME.  BUT I DID

25    FILE A MOTION TO INTERVENE IN STATE COURT, AND I AM A
```

1    PARTY ON THE TITLE.

2         THE COURT:  WHEN YOU SAY YOU'RE A "PARTY ON THE

3    TITLE" --

4         MR. ZAPPIA:  AT THE COUNTY RECORDER'S OFFICE.

5         MS. ZAPPIA:  HE'S ON THE DEED.

6         THE COURT:  WHEN DID THAT HAPPEN?  WHEN WAS YOUR NAME

7    ADDED TO THE DEED?

8         MR. ZAPPIA:  A COUPLE MONTHS AGO, TO PROTECT MY

9    INTEREST.  WE ARE MARRIED.  IT'S COMMUNITY PROPERTY IN

10   THIS STATE, YOUR HONOR.

11        THE COURT:  ALL RIGHT.

12        AND I KNOW THIS MATTER IS CURRENTLY ON CALENDAR FOR A

13   HEARING, I BELIEVE, IN FEBRUARY.

14        BUT AT THIS TIME, LET ME INQUIRE OF MR. TANADA:  AT

15   THIS POINT IS THERE GOING TO BE ANY OPPOSITION TO THE

16   REQUEST BY MR. ZAPPIA TO INTERVENE IN THIS ACTION?

17        MR. TANADA:  I BELIEVE THERE WILL BE, YOUR HONOR.

18        THE COURT:  AT THIS TIME, MR. ZAPPIA, SINCE THE COURT

19   IS NOT IN A POSITION YET TO GRANT YOUR REQUEST OR TO DENY

20   THE REQUEST TO INTERVENE, I WILL DIRECT MYSELF TO

21   MS. ZAPPIA BECAUSE SHE IS CURRENTLY THE ONLY PARTY THAT

22   HAS BEEN SUED IN THIS ACTION AND IS OTHERWISE PROPERLY

23   BEFORE THIS COURT.

24        ALTHOUGH, HAVING SAID THAT, LET ME INQUIRE, I

25   UNDERSTAND THERE HAS BEEN A CROSS-COMPLAINT FILED IN THIS

1      MATTER; IS THAT CORRECT?

2           MR. ZAPPIA:  YES.

3           THE COURT:  AS FAR AS THE CROSS-COMPLAINT, DO I

4      UNDERSTAND THAT BOTH YOU, MR. ZAPPIA AND MS. ZAPPIA, ARE

5      CROSS-COMPLAINANTS?

6           MR. ZAPPIA:  THAT'S CORRECT.

7           THE COURT:  IS THAT TRUE?

8           MR. TANADA:  I BELIEVE IT IS, YOUR HONOR.

9           THE COURT:  LET ME INQUIRE, MR. TANADA, DUE TO

10     MR. ZAPPIA'S POSITION OR ROLE IN THIS CASE AS A

11     CROSS-COMPLAINANT, DO YOU SEE MR. ZAPPIA TO HAVE STANDING

12     TO APPEAR AND OTHERWISE BE HEARD ON THE MOTION FOR

13     PRELIMINARY INJUNCTION?

14          MR. TANADA:  IF HE WISHES TO BE HEARD, YOUR HONOR, WE

15     HAVE NO PROBLEM WITH THAT.

16          THE COURT:  ALL RIGHT.

17          WITH THAT, THEN MR. ZAPPIA, I WILL ALLOW YOU TO BE

18     HEARD DURING THE COURSE OF THESE PROCEEDINGS.

19          MR. ZAPPIA:  ALL RIGHT.  THANK YOU.

20          THE COURT:  THEN THAT BRINGS US TO THE ISSUES THAT

21     HAVE BEEN PRESENTED TO THIS COURT.

22          THE COURT HAS LOOKED AT AND REVIEWED A NUMBER OF

23     DOCUMENTS.  THEY INCLUDE THE DEFENDANT'S EX-PARTE NOTICE

24     FOR AN ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER

25     REGARDING A PRELIMINARY INJUNCTION THAT WAS FILED ON

1    OCTOBER THE 5TH.

2         I HAVE ALSO DEFENDANT'S MEMORANDUM IN SUPPORT OF

3    PRELIMINARY INJUNCTION, U.S. BANK'S OPPOSITION TO

4    DEFENDANT'S MEMORANDUM IN SUPPORT OF PRELIMINARY

5    INJUNCTION, U.S. BANK'S OPPOSITION TO DEFENDANT'S EX-PARTE

6    APPLICATION TO ENJOIN FORECLOSURE, REPLY BRIEF TO

7    PLAINTIFF'S OPPOSITION TO PRELIMINARY INJUNCTION,

8    SUPPLEMENTAL AFFIDAVITS IN SUPPORT OF DEFENDANT'S MOTION

9    FOR PRELIMINARY INJUNCTION AND AMENDED PRAYER FOR RELIEF,

10   THE DECLARATION OF NICHOLAS OCEPEK IN SUPPORT OF U.S.

11   BANK'S OPPOSITION TO DEFENDANT'S EX-PARTE APPLICATION TO

12   ENJOIN FORECLOSURE, AND THEN THE NOTICE OF REMOVAL OF

13   ACTION THAT WAS FILED WHICH RESULTED IN THE CASE

14   37-2012-55358 BEING REMOVED FROM THE STATE SUPERIOR COURT

15   TO THIS DISTRICT COURT HERE.

16        SO THOSE ARE THE MATTERS THAT THE COURT HAS REVIEWED,

17   AND I HAVE SOME QUESTIONS.

18        AND FIRST OF ALL, I WILL DIRECT MYSELF TO U.S. BANK,

19   MR. TANADA, AND WHILE I DO THIS, FEEL FREE TO HAVE A

20   SEAT.

21        MR. TANADA, THERE APPEARS TO BE SOME QUESTIONS AS TO

22   WHAT HAPPENED WITH THE ASSIGNMENT OF DEED OF TRUST FROM

23   GREENPOINT TO PARK NATIONAL.

24        FROM WHAT I CAN TELL, AND PLEASE CORRECT ME IF I'M

25   WRONG, THERE APPEARS TO BE AN ASSIGNMENT THAT WAS, LOOKS

1      LIKE ORIGINALLY DATED APRIL OF 2007, AND IT APPEARS

2      NOTARIZED IN APRIL OF 2007 BUT WAS NOT ACTUALLY EXECUTED

3      OR SIGNED UNTIL 2008; IS THAT CORRECT?

4          MR. TANADA:  I BELIEVE THAT WAS TOUCHED OVER IN THE

5      OCEPEK DECLARATION.  I BELIEVE IT WAS PARAGRAPH NINE IN

6      THAT WHEN GREENPOINT MADE THE LOAN, THEY KNEW THAT

7      EVENTUALLY IT WAS GOING TO BE SOLD.

8          SO AFTER THE LOAN WAS MADE, THEY PREPARED AND SIGNED

9      THE ASSIGNMENT AGREEMENT IN APRIL 2007, BUT THE ASSIGNMENT

10     DIDN'T ACTUALLY BECOME EFFECTIVE UNTIL FEBRUARY 2008 WHEN

11     THE SALE OF THE LOAN WAS CONSUMMATED TO PARK NATIONAL

12     BANK.

13         THE COURT:  I GUESS I UNDERSTAND THAT'S THE POSITION

14     OF U.S. BANK.  BUT LOOKING AT THE SIGNATURE PAGE, IT SAYS,

15     "IN WITNESS WHEREOF, THE UNDERSIGNED ASSIGNOR HAS EXECUTED

16     THIS ASSIGNMENT OF DEED OF TRUST ON, FEBRUARY 29TH, 2008."

17     MEANWHILE, BELOW THAT, WE HAVE A NOTARY STATING THAT, "ON

18     APRIL 25TH, 2007, BEFORE ME," "PERSONALLY APPEARED PATRICK

19     NYGARD," AND EXECUTED THIS DOCUMENT, ESSENTIALLY.

20         SO WOULD YOU AGREE THAT THERE APPEARS TO BE SOME SORT

21     OF CONFLICT OR SOME SORT OF QUESTION AS TO WHEN THIS

22     DOCUMENT WAS SIGNED?

23         MR. TANADA:  WELL, YOUR HONOR, I BELIEVE FROM WHAT WE

24     UNDERSTAND FROM WHAT WAS TOLD TO US IS THAT THERE DOES

25     SEEM TO BE A DISCREPANCY ON THE FACE OF THE DOCUMENT.  BUT

```
 1        THE STORY BEHIND THE DISCREPANCY WAS, WE BELIEVE,
 2   EXPLAINED IN THE OCEPEK DECLARATION REGARDING EVERYTHING
 3   BEING FILLED IN IN APRIL 2007, AND THEN THE DATE BEING
 4   CHANGED TO FEBRUARY, I BELIEVE IT WAS 2008, WHEN THE
 5   DOCUMENT WAS OR WHEN THE SALE OF THE LOAN WAS CONSUMMATED
 6   TO PARK NATIONAL BANK.
 7        THE COURT:  DOES MR. OCEPEK HAVE ANY PERSONAL
 8   KNOWLEDGE OF THAT HAVING OCCURRED?
 9        WAS HE A WITNESS TO THE SIGNATURE BY MR. NYGARD OF
10   THIS DOCUMENT IN 2007?
11        MR. TANADA:  I DON'T BELIEVE HE WAS, YOUR HONOR.  I
12   BELIEVE HIS KNOWLEDGE COMES FROM REVIEWING THE LOAN FILE.
13        BUT AS A COUNTER-POINT TO THAT, YOUR HONOR -- THIS
14   WASN'T MENTIONED IN OUR BRIEFS; IT BECAME FROM SUBSEQUENT
15   RESEARCH THAT WE DID REGARDING THE DEED OF TRUST THAT WAS
16   COVERED IN THAT ASSIGNMENT.  UNDER CALIFORNIA LAW,
17   SPECIFICALLY CIVIL CODE 2936, THE ASSIGNMENT OF A DEBT
18   SECURED BY A MORTGAGE CARRIES WITH IT THE SECURITY.
19        SO IF THE NOTE ASSIGNMENT WAS VALID THAT WOULD ALSO
20   CARRY WITH IT THE DEED OF TRUST.
21        IN A CALIFORNIA SUPREME COURT CASE, I BELIEVE IT WAS
22   CALLED UNION SUPPLY COMPANY VERSUS MORRIS, THE COURT SAID
23   THAT "THE LIEN IS AN INCIDENT OF THE DEBT AND PASSES WITH
24   IT BY OPERATION OF LAW, THAT AN EXPRESS ASSIGNMENT OF THE
25   SECURITY IS NOT REQUIRED.  THE SECURITY PASSES WITH THE
```

1    DEBT WHICH IT SECURES AND THE ASSIGNMENT WHICH IS

2    SUFFICIENT TO TRANSFER THE DEBT MUST CARRY WITH IT THE

3    MORTGAGE OR OTHER LIEN."

4         AND I ALSO HAVE COPIES OF THAT CASE, YOUR HONOR, IF

5    YOU WISH TO VIEW IT.

6         THE COURT:  DOESN'T THAT BEG THE QUESTION, WAS THIS

7    ASSIGNMENT VALID?

8         MR. TANADA:  I BELIEVE IT GOES MORE TO THE QUESTION

9    OF THE NOTE ASSIGNMENT, YOUR HONOR.  IF THE NOTE

10   ASSIGNMENT WAS VALID, THEN IT WOULD CARRY WITH IT THE DEED

11   OF TRUST.

12        THE COURT:  THEN, THAT DOES BEG THE QUESTION, IS THE

13   NOTE ASSIGNMENT VALID, AND IN DETERMINING WHETHER OR NOT

14   THAT NOTE ASSIGNMENT IS VALID, DO WE LOOK TO THE

15   SIGNATURES AND THE DATE OF THE SIGNATURES OF THE

16   ASSIGNMENT AND THEN THE OTHERWISE NOTARIZATION OF THE

17   DOCUMENT?

18        MR. TANADA:  WELL, I BELIEVE IF THE NOTE ITSELF,

19   WHICH WAS ATTACHED TO THE OCEPEK DECLARATION, SHOWS THAT

20   THE NOTE WAS ENDORSED BY GREENPOINT, WHO WAS THE MAKER OF

21   THE NOTE, TO PARK NATIONAL, AND THEN, FROM THERE IT WAS

22   ASSIGNED TO FDIC TO PARK NATIONAL TO U.S. BANK VIA AN

23   ALLONGE THAT WAS ATTACHED TO THE NOTE.

24        THE COURT:  LET ME ASK YOU:  THERE'S ALSO REFERENCE

25   TO LEHMAN BROTHERS HAVING SOME STAKE OR ROLE WITH RESPECT

1   TO THIS PROPERTY, AND THAT'S BY WAY OF A LETTER THAT'S

2   DATED JULY THE 3RD OF 2007, AND IT'S DIRECTED TO

3   MS. ZAPPIA AS SANDY FRIEDRICHS, AND IT NOTIFIES HER THAT

4   LEHMAN BROTHERS HAD PURCHASED THE LOAN FROM GREENPOINT.

5            DO YOU KNOW ANYTHING ABOUT LEHMAN BROTHERS AND

6   WHETHER OR NOT THEY HAD SOME INTEREST IN THE SUBJECT

7   PROPERTY?

8        MR. TANADA:  YES, YOUR HONOR.  SUBSEQUENT RESEARCH

9   THAT OCCURRED AFTER WE FILED OUR OPPOSITION, WE LEARNED,

10  FROM WHAT WE UNDERSTAND, GREENPOINT SOLD THE LOAN TO

11  LEHMAN, BUT IT RETAINED SERVICING RIGHTS TO THE LOAN.  SO

12  IT DID RETAIN SOME CONNECTION TO THE LOAN.

13       UNDER THAT SAME AGREEMENT WHERE GREENPOINT SOLD THE

14  LOAN TO LEHMAN, IT WAS AGREED UPON THAT IF LEHMAN SOLD THE

15  LOAN, GREENPOINT WOULD ASSIGN THE LOAN DIRECTLY TO THE

16  PURCHASER, WHICH IN THIS CASE WOULD BE PARK NATIONAL BANK.

17       AND YOUR HONOR, IF YOU REQUIRE ANY SUPPLEMENTAL

18  BRIEFING ON THIS ISSUE OR ANY SUPPLEMENTAL DECLARATIONS OR

19  ATTACHMENTS, WE WOULD BE HAPPY TO PROVIDE THAT.

20       THE COURT:  WELL, I AM GOING TO REQUEST ADDITIONAL

21  BRIEFING AND ADDITIONAL MATERIALS OR SUPPORTING DOCUMENTS

22  ON THAT BECAUSE THERE IS THAT QUESTION THAT'S RAISED BY

23  THE LETTERS, THE LETTER, PROVIDED BY MS. FRIEDRICH.

24       A FURTHER QUESTION I HAVE IS, DO YOU HAVE AN

25  EXPLANATION AS TO HOW A STATEMENT WAS ISSUED BY THE BANK

1    THAT REPORTED A ZERO BALANCE AFTER THE OFFER OF A PAYOFF

2    OR AT LEAST THE DIRECTING THE PROVIDING OF A CHECK BY THE

3    ZAPPIA'S WHICH THEY CLAIM EXTINGUISHED AND DISCHARGED THE

4    DEBT, HOW IT IS THEN THAT THE BANK APPARENTLY ACCEPTED THE

5    CHECK, AND THEREAFTER ISSUED A STATEMENT SAYING THAT THE

6    BALANCE WAS NOT ZERO AND THEN THEREAFTER ISSUED, AS I

7    UNDERSTAND, A REFUND CHECK?

8         MR. TANADA:  YES, YOUR HONOR.

9         I BELIEVE YOU'RE REFERRING TO THE ELECTRONIC FUND

10   TRANSFER; IS THAT CORRECT?

11        THE COURT:  I THINK SO, YES.

12        MR. TANADA:  WELL, YOUR HONOR, WHAT HAPPENED WAS WE

13   DID RECEIVE THE ELECTRONIC TRANSFER FROM MR. ZAPPIA IN

14   MARCH 2012; AND INITIALLY, U.S. BANK BELIEVED THE FUNDS

15   WERE GOOD.  SO THEY ACCEPTED THE REBATE, AND THEN THEY

16   SENT A REBATE OF THE EXCESS AMOUNT THAT WAS DUE AND PAID

17   OVER THE AMOUNT THAT WAS DUE.

18        HOWEVER, SOON AFTER THEY ACCEPTED THE CHECK, THEY

19   LEARNED IT HAD BEEN WRITTEN ON A CLOSED ACCOUNT.  AND

20   BECAUSE IT HAD BEEN WRITTEN ON A CLOSED ACCOUNT, THE LOAN

21   WAS NEVER DISCHARGED OR PAID OFF.

22        YOUR HONOR, IF THERE WAS A ZERO BALANCE AND IF THE

23   LOAN HAD BEEN PAID OFF, WE WOULDN'T BE HERE.  WE WOULD

24   HAVE GLADLY ACCEPTED THAT.

25        THE COURT:  THEN, AS FAR AS THE -- I'M NOT SURE IF

1    I'M SAYING THIS RIGHT -- THE ALLONGE THAT WAS REFERENCED

2    IN THIS ACTION, IS THERE ANY INFORMATION AS TO WHETHER OR

3    NOT THIS ALLONGE WAS ATTACHED TO THE SUBJECT NOTE?

4        MR. TANADA:  YES, YOUR HONOR.  THAT WAS CLEARED UP IN

5    THE OCEPEK DECLARATION IN WHICH HE STATED THAT THE

6    ENDORSEMENT AND THE ALLONGE WAS BOTH ON THE LAST PAGE OF

7    THE NOTE.

8        THE COURT:  YOU SAY THEY WERE BOTH ON THE LAST --

9        MR. TANADA:  I'M SORRY.  THE ENDORSEMENT.  ARE WE

10   TALKING ABOUT THE ENDORSEMENT FROM GREENPOINT TO PARK

11   NATIONAL BANK?  I BELIEVE THAT WAS ON THE LAST PAGE OF THE

12   NOTE.

13       BUT I THINK WHAT'S IMPORTANT, YOUR HONOR, IS THAT THE

14   OCEPEK DECLARATION MADE CLEAR THAT BOTH THE ENDORSEMENT

15   AND THE ALLONGE WERE ATTACHED TO THE NOTE, WHICH IS ALL

16   THAT'S REQUIRED UNDER CALIFORNIA LAW.

17       THE COURT:  ALL RIGHT.  THANK YOU.  LET ME HEAR FROM

18   THE ZAPPIA'S.

19       WITH RESPECT TO THIS CLAIM THAT THERE WAS A PAYOFF OR

20   A PROPER OFFER TO PAY OFF THE NOTE, DO YOU HAVE ANY

21   INFORMATION TO SHOW THAT THIS ACCOUNT IN FACT WAS PAID

22   OFF?

23       MR. ZAPPIA:  YES, WHAT I DID WAS I FILED A REVERSE

24   WIRE TRANSFER.  AND THE BANK IS UNDER STRICT GUIDELINES ON

25   HOW TO HANDLE THE REVERSE WIRE TRANSFER WHICH COUNSEL HAS,

1   YOU KNOW, STATED THAT THEY RECEIVED.

2      IT APPEARS THAT THEY, JUST FROM MY TAKE ON IT, IT

3   APPEARS THAT THEY RECEIVED THE REVERSE WIRE TRANSFER AND

4   DIDN'T HANDLE IT PROPERLY WITHIN THE BANK ITSELF.  SO

5   THAT'S AN ERROR ON THEIR PART.  BUT EVERYTHING I DID WAS

6   PROPER.

7      THE COURT:  WELL, LET ME ASK YOU, AS FAR AS THE

8   ACCOUNT FROM WHICH THE ELECTRONIC TRANSFER ORIGINATED,

9   THERE'S INFORMATION THAT THAT WAS A CLOSED ACCOUNT?

10      MR. ZAPPIA:  THAT IS CORRECT.

11      THE COURT:  SO THE TRANSFER WOULD HAVE HAD NO EFFECT

12   IN TERMS OF ACTUALLY TRANSFERRING THE AMOUNT OF MONEY THAT

13   WAS THE SUBJECT OF THE TRANSFER; IS THAT CORRECT?

14      MR. ZAPPIA:  NOT QUITE.

15      WHEN A REVERSE WIRE TRANSFER IS DONE ON A CLOSED

16   ACCOUNT, THE BANK HAS 24 HOURS TO NOTIFY ME THAT IT'S,

17   THAT THEY DIDN'T HANDLE IT, IF IT DIDN'T GO THROUGH.  THEY

18   RECEIVED THE FUNDS.  IF THEY HANDLED IT AS A REVERSE WIRE

19   TRANSFER -- THEY DID RECEIVE THE FUNDS FROM THE BANK WHICH

20   IN THIS CASE IS UNION BANK BECAUSE IT WAS A REVERSE WIRE

21   TRANSFER.  IT ONLY GOES ONE DIRECTION.  AND SO THEY DID

22   RECEIVE THEIR FUNDS, IF THEY HANDLED IT AS REVERSE WIRE

23   TRANSFER.

24      THE COURT:  BUT YOU DIDN'T HAVE THE FUNDS IN THE

25   AMOUNT OF $287,734.26 TO PAY OFF THE LOAN; WOULD THAT BE

1    ACCURATE?

2       MR. ZAPPIA:  IN THAT ACCOUNT, NO.  BUT THAT ACCOUNT

3    WAS HANDLED FOR AN OFFSET AS A DEBIT.

4       THE COURT:  I'M NOT SURE IF I UNDERSTAND HOW YOU CAN

5    HAVE AN ACCOUNT THAT DOESN'T HAVE $287,000 IN IT, BUT THEN

6    SOMEHOW OR ANOTHER A BANK MAKES A PAYMENT IN THAT AMOUNT.

7       DO YOU HAVE ANY RECORDS THAT SHOW THAT THERE WAS

8    ACTUALLY THE TRANSFER OF THIS $287,000 THAT WAS RECEIVED

9    BY U.S. BANK?

10       MR. ZAPPIA:  THOSE ARE THINGS WE ARE GOING TO BE

11    ASKING FOR IN DISCOVERY FROM U.S. BANK.

12       THE COURT:  SO AT THIS TIME, YOU DO NOT HAVE --

13       MR. ZAPPIA:  AT THIS TIME, WE DO NOT HAVE, WE HAVE

14    NOT BEEN PROVIDED IT.  WE ASKED U.S. BANK FOR IT, BUT WE

15    HAVE NOT BEEN PROVIDED IT.

16       THE COURT:  AND IN YOUR PAPERS YOU'VE INDICATED THAT

17    YOU ARE PREPARED TO FILE A BOND; IS THAT CORRECT?

18       MR. ZAPPIA:  YES, FOR WHATEVER -- WE WOULD BE

19    PREPARED TO FILE A BOND FOR WHATEVER THEY CLAIM IS THE

20    DISCREPANCY IN THE PAYMENTS, AS LONG AS THEY'RE ABLE TO

21    FILE A BOND OR PUT UP SOMETHING TO PROTECT OUR INTEREST

22    ALSO.

23       WE WANT OUR BUSINESS OUT OF THIS BUILDING.  SO THAT'S

24    WHY WE'RE ASKING FOR THIS PRELIMINARY INJUNCTION.

25       THE COURT:  SO LET ME ASK, AS FAR AS THIS MATTER, IF

1    THE COURT WERE TO ISSUE A PRELIMINARY INJUNCTION AT THIS
2    TIME, WHY SHOULDN'T THE COURT ALSO REQUIRE YOU TO PAY THE
3    MONTHLY RENT THAT WOULD OTHERWISE BE DUE UNDER THIS NOTE?
4         MR. ZAPPIA:   THERE CURRENTLY ISN'T ANYTHING DUE ON
5    THIS.  IT WAS OFFSET IN THE REVERSE WIRE TRANSFER THAT
6    THEY RECEIVED.
7         THERE'S A COUPLE THINGS HERE, YOUR HONOR, THAT WE'RE
8    TOUCHING UPON.  ONE IS THE REVERSE WIRE TRANSFER THAT THEY
9    SEEMED TO HAVE MISHANDLED INCORRECTLY ON THEIR SIDE, AND
10   WHEN THEY FILED THE LAWSUIT AGAINST US IS WHEN WE
11   DISCOVERED THE ASSIGNMENT OF THE DEED OF TRUST BEING THE
12   WAY IT IS WITH THE NOTARY AND THE DATES CHANGED AND STUFF
13   LIKE THAT.  WE'RE THE ONES THAT DISCOVERED THAT AND
14   POINTED THAT OUT TO THEM.
15        THE COURT:   WELL, TO THE EXTENT THE COURT DOES NOT
16   FIND THAT YOU HAVE SHOWN ADEQUATE PROOF THAT THIS LOAN,
17   THIS NOTE HAS BEEN DISCHARGED IN THE MANNER THAT YOU HAVE
18   SUGGESTED BUT OTHERWISE DID FIND THAT THERE APPEARS TO BE
19   SOME QUESTIONS REGARDING THE ORIGINAL ASSIGNMENT, AND
20   THEREFORE WOULD BE AIMING TO HAVE YOU PAY THE MONTHLY RENT
21   THAT WAS OTHERWISE, THE MORTGAGE NOTE I SHOULD SAY, THAT
22   WAS OTHERWISE SET UP, AT THIS POINT, ARE YOU IN THE
23   POSITION TO MAKE THAT PAYMENT ON A MONTHLY BASIS IF THAT
24   WAS A CONDITION OF GRANTING THE PRELIMINARY INJUNCTION?
25        MR. ZAPPIA:   YES, YOUR HONOR.

1          WOULD WE BE PAYING U.S. BANK, OR WOULD WE BE PUTTING

2     IT INTO A TRUST WITHIN THE COURT?

3          THE COURT:  THAT'S A GOOD QUESTION.

4          I WOULD BE PREPARED TO ENTERTAIN OR CONSIDER SOME

5     OPTIONS.

6          LET ME EXPLAIN SOMETHING TO MR. TANADA AT THIS POINT.

7          HERE'S MY CONCERN:  WE HAVE THIS TRANSACTION THAT

8     PURPORTEDLY OCCURRED BETWEEN 2007 AND 2008, AND YOU HAVE A

9     DOCUMENT THAT ON ITS FACE IS CLEARLY IN CONFLICT.  YOU

10    HAVE THE EXECUTION DATE OCCURRING MONTHS, IF NOT A YEAR

11    AFTER THE DOCUMENT IS NOTARIZED.  AND UP UNTIL TODAY,

12    THERE REALLY WASN'T A CLEAR EXPLANATION, AND IN FACT, AT

13    THIS POINT, THE ONLY EXPLANATION IS ONE THAT APPEARS TO BE

14    DERIVED FROM REVIEWING BUSINESS RECORDS, AND ISN'T BASED

15    UPON ANY PERSONAL KNOWLEDGE.

16         FOR EXAMPLE, WE DON'T HAVE EITHER THE NOTARY OR THE

17    SIGNING INDIVIDUAL WHO EXECUTED THIS DOCUMENT WHO ENDS UP

18    STATING THAT "I SIGNED THIS DOCUMENT ON APRIL 25TH, 2007,

19    AND AS FAR AS THIS DATE OF 2008, I KNOW NOTHING ABOUT IT,

20    I HAVE NO IDEA HOW IT GOT THERE."  AND THEN, WE DON'T HAVE

21    A DECLARATION FROM SOMEONE INDICATING HOW THAT 2008 NUMBER

22    WAS INSERTED.

23         SO THAT'S THE GREATEST CONCERN THAT THE COURT HAS AT

24    THIS POINT.

25         CAN YOU ADDRESS THAT?

1        MR. TANADA:  YOUR HONOR, I BELIEVE WE CAN ADDRESS

2    THAT IN SUPPLEMENTAL BRIEFING.

3        I BELIEVE IT'S TIED IN WITH THE LEHMAN ISSUE.  SO IF

4    WE HAD A CHANCE TO SUPPLEMENT OUR BRIEF AND DECLARATION

5    WITH SOME INFORMATION THAT WE COULD PROVIDE, IN ADDITION

6    TO THE LEHMAN CONCERNS, WE COULD PROVIDE ANY INFORMATION.

7        THE COURT:  ALL RIGHT.

8        AT THIS POINT, I'M INCLINED TO GRANT THE MOTION FOR

9    THE PRELIMINARY INJUNCTION AT LEAST THROUGH THE TIME

10   PERIOD THAT WOULD BE REQUIRED TO ALLOW YOU TO PROVIDE

11   FURTHER MATERIALS ON THIS VERY IMPORTANT ISSUE.

12       AND WHAT I'LL DO THEN IS I'M GOING TO ISSUE AN ORDER

13   LATER THIS AFTERNOON WHICH WILL GRANT THE PRELIMINARY

14   INJUNCTION WHICH WILL ENJOIN U.S. BANK FROM SELLING THIS

15   PROPERTY PENDING FURTHER PROCEEDINGS, AND WE'LL PROVIDE A

16   BRIEFING SCHEDULE FOR THE PARTIES TO ADDRESS THIS

17   CRITICALLY IMPORTANT ISSUE.

18       AND HOW MUCH TIME DO YOU BELIEVE YOU NEED FOR

19   PURPOSES OF PREPARING YOUR PLEADINGS, MR. TANADA?

20       MR. TANADA:  YOUR HONOR, WE COULD HAVE IT FOR YOU BY

21   THE END OF NEXT WEEK.

22       THE COURT:  ALL RIGHT.

23       SO THEN I'LL DIRECT THAT BY NEXT FRIDAY, WHICH I

24   BELIEVE IS THE 16TH OF NOVEMBER, THAT YOU FILE YOUR

25   SUPPLEMENTAL MATERIALS.

1        AND THEN AS FAR AS A RESPONSE FROM THE ZAPPIA'S,

2   WOULD YOU -- THE FOLLOWING WEEK IS THANKSGIVING WEEK.

3        SO HOW MUCH TIME ARE YOU ASKING FOR TO RESPOND?

4        MR. ZAPPIA:  I'M GOING TO NEED A LITTLE BIT OF TIME,

5   YOUR HONOR, BECAUSE I'M LEAVING TO JAPAN FOR TWO WEEKS ON

6   THE 20TH OF NOVEMBER, AND I'LL BE BACK ON THE 5TH OF

7   DECEMBER.

8        THE COURT:  THAT'S A LITTLE BIT MORE TIME THEN I'M

9   PREPARED TO GRANT.  BUT I AM PREPARED TO GIVE YOU MORE

10  THAN A WEEK WHICH IS WHAT I'M GIVING RIGHT NOW TO U.S.

11  BANK.

12       SO I'M NOT GOING TO HAVE YOU FILE SOMETHING BY THE

13  23RD, BUT I WILL DIRECT THAT BY THE FOLLOWING FRIDAY, THE

14  30TH.

15       MR. ZAPPIA:  THE 30TH?

16       THE COURT:  YES.

17       MR. ZAPPIA:  OF DECEMBER?

18       THE COURT:  NOVEMBER.

19       MR. ZAPPIA:  NOVEMBER.

20       THE COURT:  RIGHT.

21       SO AT THIS POINT, WE WOULD NEED FROM U.S. BANK THEIR

22  SUPPLEMENTAL PAPERS BY NOVEMBER 16TH, WHICH IS ONE WEEK,

23  AND THEN YOU WOULD HAVE TWO WEEKS TO REVIEW, TO RESPOND TO

24  THEIR SUPPLEMENTAL PAPERS.

25       AND THEN AT THAT POINT, THE COURT WOULD DECIDE

1    WHETHER OR NOT TO DIRECT FURTHER BRIEFING AND OR A FURTHER

2    HEARING TO DETERMINE WHETHER OR NOT TO MAINTAIN THE

3    PRELIMINARY INJUNCTION OR SOME OTHER VARIATION ON AN

4    ORDER.

5         SO THAT'S WHAT I'M PREPARED TO DO.

6         AND AS TO A BOND, LET ME HEAR FROM MR. TANADA.   AT

7    THIS POINT, DO YOU HAVE ANY PROPOSAL OR ANY REQUEST AS TO

8    A BOND AND THE AMOUNT OF A BOND?

9         MR. TANADA:   YES, YOUR HONOR.

10        UNDER THE LOAN DOCUMENTS, U.S. BANK IS ENTITLED TO

11   FORECLOSE ON THIS PROPERTY AND TO REALIZE THE VALUE OF THE

12   PROPERTY VIA A FORECLOSURE SALE.

13        THE OUTSTANDING BALANCE OF THE LOAN IS CURRENTLY A

14   LITTLE OVER $280,000.

15        SO U.S. BANK SUGGESTS THE BOND SHOULD BE SET AT AT

16   LEAST $100,000 WHICH IS LESS THAN HALF OF THE OUTSTANDING

17   AMOUNT.

18        THE COURT:   ALL RIGHT.

19        CAN YOU DO THAT, MR. ZAPPIA?

20        MR. ZAPPIA:   YEAH.   CAN I ADDRESS ONE THING?

21        HE'S REFERRING TO THE NOTE.   SO CAN I BRING UP ONE

22   THING REAL QUICK?

23        THE COURT:   YES.

24        MR. ZAPPIA:   HE'S REFERRING TO THE NOTE WHICH I

25   BELIEVE IS THE PROMISSORY NOTE; IS THAT CORRECT?

1      MR. TANADA:  YES.

2      MR. ZAPPIA:  IF YOU LOOK AT THE PROMISSORY NOTE ON

3  LINE 3A OF THE PROMISSORY NOTE, IT ADDRESSES ANY

4  DISCREPANCIES, AND THIS IS JUST A STANDARD PROMISSORY NOTE

5  WHICH A LOT OF THE BANKS ARE CURRENTLY USING.

6      ON THIS PROMISSORY NOTE, IT SAYS THAT ANY

7  DISCREPANCIES CAN BE CLEARED UP ON THE DATE OF MATURITY.

8  THE DATE OF MATURITY ON THIS NOTE IS IN 2037.

9      SO IT IS MY BELIEF THAT THIS WHOLE PROCEEDING IS A

10 LITTLE BIT PREMATURE AT THIS POINT.

11     THE COURT:  I'VE REVIEWED THAT, AND I'M NOT SATISFIED

12 THAT THAT IS SOMETHING ON WHICH THE COURT WOULD BE

13 PREPARED TO RELY ON IN ISSUING THIS PRELIMINARY

14 INJUNCTION.

15     WHAT I AM PREPARED TO FIND AT THIS TIME IS ON THE

16 LIKELIHOOD OF SUCCESS ON THE MERITS.  AT THIS POINT, THE

17 COURT FINDS THAT THE DEFENDANTS HAVE MADE A SUFFICIENT

18 SHOWING OF LIKELIHOOD OF SUCCESS ON THE MERITS REGARDING

19 THE CLAIM THAT U.S. BANK IS NOT PROPERLY THE HOLDER OF THE

20 SUBJECT NOTE, THAT THEY HAVE NOT PROPERLY BEEN ASSIGNED OF

21 THE INTEREST THAT ORIGINATED WITH GREENPOINT IN 2007, AND

22 THAT IS DUE TO THE CONFLICTS WITHIN THE ASSIGNMENT

23 DOCUMENT ITSELF, DEMONSTRATING THAT THE DOCUMENT WAS

24 SIGNED IN 2008 BUT NOTARIZED IN 2007.

25     NEXT, THE COURT FINDS THAT IN THE EVENT THAT THIS

1    PROPERTY WERE SOLD AT THIS POINT, GIVEN THE UNCERTAINTY OF

2    THE VALIDITY OF THE ASSIGNMENT, THERE WOULD BE LIKELY

3    IRREPARABLE HARM TO THE MOVING PARTY ABSENT A PRELIMINARY

4    INJUNCTION.

5         THAT IS TO SAY, CURRENTLY IT APPEARS THE SUBJECT

6    PROPERTY IS BEING UTILIZED FOR BUSINESS PURPOSES, AND IN

7    THE EVENT THE PROPERTY WERE TAKEN FROM THE DEFENDANT THAT

8    IT WOULD LIKELY AFFECT THE BUSINESS'S ABILITY TO CONTINUE

9    TO OPERATE, AT LEAST IN THE SHORT TERM; AND THAT THE COURT

10   HAS CONSIDERED THE BALANCE OF EQUITIES IN THIS MATTER, HAS

11   CONSIDERED WHAT, IF ANY, IMPACT THIS INJUNCTION WOULD HAVE

12   ON U.S. BANK.

13        THE COURT FINDS THAT THE REQUIREMENT OF A BOND WILL

14   SUFFICIENTLY TAKE CARE OF THOSE CONCERNS AND ALSO TO THE

15   EXTENT THAT THE COURT IS PREPARED TO DIRECT THAT A MONTHLY

16   MORTGAGE AMOUNT BE PAID -- AND IT WILL GET TO THE

17   PARTICULARS ON THAT IN A MOMENT -- BUT THAT ALSO WILL

18   MILITATE AND REDUCE ANY POSSIBLE HARM TO U.S. BANK.

19        THE COURT HAS REVIEWED THE ISSUE OF WHETHER OR NOT

20   THE INJUNCTION IS IN THE PUBLIC INTEREST.

21        AT THIS POINT, THIS TRANSACTION APPEARS TO BE LIMITED

22   IN SCOPE IN ITS APPLICATION TO THE PARTIES BEFORE THE

23   COURT AND FINDS THAT AS TO THIS FACTOR, IT IS NEUTRAL.

24        BUT UNDER THE TOTALITY OF THE CIRCUMSTANCES, THE

25   COURT DOES FIND THAT A PRELIMINARY INJUNCTION AT THIS

1        POINT WOULD BE APPROPRIATE.

2             AND SO THEN, AS TO THIS MONTHLY MORTGAGE AMOUNT, LET

3        ME HEAR FROM MR. TANADA.

4             WHAT WOULD THE MONTHLY MORTGAGE AMOUNT HAD BEEN AT

5        THIS POINT WERE THIS MORTGAGE STILL IN GOOD STANDING OR

6        OTHERWISE IN EFFECT?

7             MR. TANADA:  I CAN'T CALCULATE IT OFF THE TOP OF MY

8        HEAD, YOUR HONOR.  I BELIEVE IT WAS -- THE PAYMENTS WERE

9        ROUGHLY A LITTLE OVER $2,000, I BELIEVE, FOR THE MONTHS OF

10       APRIL AND MAY.

11            LET ME SEE IF I CAN FIND IT IN THE DECLARATION.

12            IT WAS A LITTLE OVER $2100, I BELIEVE, BEGINNING IN

13       JUNE.

14            THE COURT:  ALL RIGHT.

15            LET ME INQUIRE:  AT THIS POINT, WOULD THERE BE ANY

16       POSSIBILITY THAT THE PARTIES COULD TRY TO RESOLVE THIS

17       MATTER AND TRY TO OBTAIN SOME TYPE OF REFINANCING?

18            IS THAT SOMETHING POSSIBLE, OR ARE WE PAST THAT?

19            MR. TANADA:  I HONESTLY CAN'T SPEAK ON BEHALF OF THE

20       BANK IN THAT RESPECT, YOUR HONOR.

21            IT IS SOMETHING I WOULD HAVE TO DISCUSS WITH MY

22       CLIENT, AND IT HASN'T BEEN BROUGHT UP BEFORE.

23            THE COURT:  ARE YOU INTERESTED IN SOMETHING LIKE

24       THAT, MR. ZAPPIA?

25            MR. ZAPPIA:  WE ARE INTERESTED IN RESOLUTION OF THIS

1    CASE, YOUR HONOR.

2         THE COURT:  BUT IN THAT FORM OF RESOLUTION?

3         MR. ZAPPIA:  WE WOULD BE OPEN TO DISCUSSING IT WITH

4    THEM, YES.

5         THE COURT:  ALL RIGHT.

6         WELL, I WILL INVITE YOU TO CONFER WITH EACH OTHER AND

7    DETERMINE WHETHER OR NOT A MUTUALLY SATISFACTORY

8    RESOLUTION CAN BE REACHED OF ONE THAT IS REASONABLE AND

9    RECOGNIZES THE ISSUES IN THIS MATTER.

10        SO TO THE EXTENT THAT THE COURT DID REQUIRE THE

11   PAYMENT OF $2100 ON THE --

12        MR. TANADA:  YOUR HONOR, I BELIEVE IT WAS ABOUT $2100

13   FROM APRIL ON.  THE AMOUNT CHANGED SLIGHTLY FROM BETWEEN

14   APRIL TO MAY TO JUNE, BUT I BELIEVE THEY WERE ROUGHLY

15   ABOUT $2100 EACH.

16        THE COURT:  KEEPING IN MIND, I'M NOT LOOKING AT

17   HAVING THE ZAPPIA'S GO BACK AND PAY WHAT WAS OTHERWISE DUE

18   FROM THAT PERIOD NOW VERSUS FROM THIS POINT FORWARD,

19   DIRECTING THAT AN AMOUNT EQUAL TO WHAT THE MORTGAGE

20   PAYMENT WOULD HAVE BEEN TO BE PAID ON A MONTHLY BASIS, AND

21   THAT IT WOULD BE DUE AND PAYABLE, I WILL SAY, ON THE 15TH

22   OF THE MONTH.

23        MR. ZAPPIA:  STARTING THIS MONTH OR NEXT MONTH?

24        THE COURT:  STARTING THIS MONTH.

25        SO AS FAR AS HOW THAT WOULD BE PAID OR WHAT

1    ARRANGEMENTS WOULD BE MADE, WHAT IS YOUR SUGGESTION ON

2    WHETHER OR NOT THIS WOULD JUST BE PAID DIRECTLY TO THE

3    DEFENDANT OR WHETHER OR NOT IT SHOULD BE PLACED IN SOME

4    TYPE OF COURT ACCOUNT?

5        MR. TANADA:  YOUR HONOR, WE PREFER IT BE PAID, I

6    BELIEVE, DIRECTLY TO US.  BUT IF YOU WOULD PREFER A COURT

7    ACCOUNT, THAT WOULD ALSO BE FINE.

8        THE COURT:  ANY VIEWS ON THAT?

9        MR. ZAPPIA:  I'M CONFUSED.  "TO US" MEANING THE LAW

10   FIRM OR U.S. BANK?

11       THE COURT:  I THINK HE MET U.S. BANK; IS THAT RIGHT?

12       MR. TANADA:  YES.

13       MR. ZAPPIA:  OKAY.

14       I WOULD PREFER TO SEE IT IN SOME KIND OF COURT TRUST

15   ACCOUNT, MYSELF.

16       THE COURT:  I'LL TAKE A CLOSER LOOK AT THAT.  AND

17   I'LL ISSUE AN ORDER LATER TODAY, AND I'LL SET FORTH WHAT

18   THE PROTOCOL OR OTHERWISE WHAT THE ARRANGEMENT WILL BE.

19       ALL RIGHT?

20       MR. ZAPPIA:  THANK YOU.

21       THE COURT:  ALL RIGHT.

22       IS THERE ANYTHING ELSE AT THIS TIME TO CONSIDER OR TO

23   DISCUSS?

24       MR. TANADA:  NO, YOUR HONOR.

25       MR. ZAPPIA:  ONE THING, I'M GOING TO BE OUT OF THE

1      COUNTRY FOR THAT POINT.  SOME OF MY STUFF -- I'LL BE

2      FAXING DOCUMENTS OR E-MAILING.  CAN I HAVE AN ELECTRONIC

3      SIGNATURE ON THAT BECAUSE I'M GOING TO BE OUT OF THE

4      COUNTRY DURING THAT PERIOD?

5           WOULD THAT BE A PROBLEM?

6           THE COURT:  IS THAT A PROBLEM?  NO, THAT'S NOT A

7      PROBLEM.

8           MR. ZAPPIA:  OKAY.  THANK YOU.

9           THE COURT:  THAT WILL CONCLUDE THIS PROCEEDING.

10           MR. ZAPPIA:  THANK YOU, YOUR HONOR.

11           (MATTER CONCLUDED.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                                C-E-R-T-I-F-I-C-A-T-I-O-N

4

5          I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
     AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
6    DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
     TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
7    THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
     STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
8    WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL
     CONFERENCE.

9          DATED: NOVEMBER 26, 2012, AT SAN DIEGO, CALIFORNIA.

10

11                      /S/ JULIET Y. EICHENLAUB
                        JULIET Y. EICHENLAUB, RPR, CSR
12                      OFFICIAL COURT REPORTER
                        CERTIFIED SHORTHAND REPORTER NO. 12084

13

14

15

16

17

18

19

20

21

22

23

24

25